Booth, Judge,
delivered the opinion of the court:
The plaintiff sues to recover an alleged overpayment of income taxes assessed and collected by the Commissioner of Internal Revenue upon profits claimed to have accrued to the plaintiff by reason of the sale of certain corporate stock: bequeathed to him in the will of his deceased father. The facts in detail have been agreed upon and duly stipulated by the parties. The plaintiff’s father, a resident of La Salle, La Salle County, Illinois, died February 11, 1918. By the provisions of his will, probated March 21, 1918, the plaintiff became entitled to a one-fourth share in the residuary estate. Among the assets of the same were 6,000 shares' of preferred and 17,000 shares of common stock of the Corn Products Refining Company. The estate was a very large one and comprised numerous holdings of great value. The plaintiff and his two sisters received ,the entire estate in trust and were also appointed executors “ with power over the personal property.” By the terms of clause three of the will the plaintiff and his two sisters, the only surviving children of the testator, were directed at the end of one year after the probating of the will to divide the residuary estate into four parts, equal in value, and “by appropriate deed, deeds, as *493 signments, or other means of conveyance convey one of such four equal parts ” to the plaintiff, and a like share to each of his sisters; the Merchants’ Loan & Trust Company of Chicago, Illinois, to receive in trust a one-fourth part, to hold and administer, for the benefit of the testator’s grandson during his minority.
On March 13, 1918, a little over a month after the death of the testator, and previous to the probating of the will, the plaintiff and his two sisters, acting as executors and trustees under said will, scheduled the assets of the estate into four equal parts, and by an instrument in writing, duly executed, set over, assigned, and delivered to each of the residuary legatees and devisees their one-fourth part of the residuary estate, • each legatee receipting therefor and expressly agreeing “ to promptly meet any assessment called for by the executors of the estate for estate liabilities.” Under this agreement the stock involved in this suit was equally divided, 1,500 shares of the preferred and 4,250 of the common stock being receipted for by the plaintiff, as appears from Schedule C.
Subsequent to the execution of the above agreement, June 18,1918, an order was entered by the probate court authorizing the executors to distribute to the residuary legatees all of the stocks of the testator, except certain ones with which we have no concern.
On November 12, 1918, the Corn Products Refining Company transferred on its. books to plaintiff 1,500 shares of preferred and 4,250 shares of common stock, issuing to him certificates therefor on November 18, 1918. On the same day, viz, November 18, 1918, the plaintiff sold his entire holdings in the corporation. In making up his tax return for the year 1918 he did not include therein any gain or profit upon the sale of said stock. The commissioner re-audited the plaintiff’s income-tax return, finally assessing an additional income tax of $39,616.82 against him, predicating his right to do so upon a contention that plaintiff acquired all of said stock upon the date of the death of the testator, and that the difference between the market value of the stock on that date and the date of sale measured the profits of the transaction. Plaintiff appealed to the Board of Tax *494 Appeals, and that board, in a well-considered opinion, reduced plaintiff’s income-tax liability to $23,316.32. This amount the plaintiff paid, filed a claim for refund, which was denied, and hence this suit to recover the tax paid, with interest thereon.
The plaintiff’s argument is addressed exclusively to the date November 18, 1918. On this date it is insisted he became for the first time possessed of the absolute ownership and title to the stock, and having sold it immediately realized no profit from the sale. The defendant, on the other hand, sedulously contends that the date of the testator’s death determines title. The Board of Tax Appeals, in disagreement with both contentions, fixed March 13, 1918, the date of the contract heretofore set out, as the determinative date.
The applicable sections of the revenue act are sections 202 and 213 of the act of 1918, 40 Stat. 1057.
Section 213 provides in part as follows:
“ That for the purposes of this title (except as otherwise ■ provided in section 233) the term gross income ’—
“(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service, * * * or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever, * * *; but
“ (b) Does not include the following items, which shall be exempt from taxation under this title:
$ ‡ * ❖
“(3) The value of property acquired by gift, bequest, devise, or descent (but the income from such property shall be included in gross income) * *
Section 202 (a) provides in part as follows:
“ That for the purpose of ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, the basis shall be—
“(1) In the case of property acquired before March 1, 1913, the fair market price or value of such property as of that date; and
“(2) In the ease of property acquired on or after that ■date, the cost thereof.”
*495 Paragraph (3) of section 213 is emphasized by both parties, and the word “ acquired ” is singled out, and much effort is devoted to it to give it a restricted and technical meaning in support of the various contentions. A large number of cases are cited pro and con respecting the title of a deceased person’s estate in the hands of his administrator or executor, and the time when a legatee becomes the owner of his legacy. In this case the court is in nowise concerned with the rights of creditors or the liabilities of executors to the same in the course of the administration and distribution of a testator’s estate. We are alone confronted with a revenue act imposing a tax upon income derived from a bequest and ascertaining the intent of Congress in enacting the provision of law. Manifestly it requires no more than a mere statement that a residuary legatee under a will acquires an interest in a residuary estate on the date of the death of the testator. It is likewise obvious that he may sell and dispose of the same if he chooses. Whether the legacy is ever received in kind is, of course, dependent upon prior bequests and priority claims against the estate fixed by law. Seemingly it is elementary that until the legatee receives his legacy in possession, vested with absolute control and dominion over it, capable of asserting ownership against all the world, the contingent interest vesting at the date of the death of the testator is not merged in fee simple title. The taxing act under review recognizes this legal status. The income from a deceased person’s estate is taxed in the hands of the administrator or executor, and a return must be made by these officials. If partial distribution of estate income has been properly made during the period of administration, it is to be charged to the beneficiary receiving the same and the executor credited with the amount distributed. Congress was fully aware of testate and intestate laws and the effect of death upon title to property descending by will. Surely it is a matter of no doubt that the executor’s title to the personal estate of the testator is súch that he may sell so much thereof as is necessary to discharge the legal obligations of the testator, and otherwise pass good title in executing the terms of the will as directed. He may institute actions at law to recover debts of the testator as *496 well as actions for the recovery of personal property. We find, no decision of any court in the long list of cases cited which in any way modifies the long-established principle of law that the legal title to personal property vests in the personal representative of a deceased person, he being responsible under his bond for the faithful administration of the estate. It is difficult to conceive that Congress, in using the language “ the value of property acquired by * * * bequest,” intended to fix irrevocably a value at the date of the testator’s death when by the very nature of the event it was incapable of ascertainment,’ speculative, and dependent finally upon a course of legal proceedings which must be first observed before it may be fixed. United States v. Jones, 236 U. S. 106, 112.
“It hardly needs statement that personal property does not pass directly from a decedent to legatees or distributees, but goes primarily to the executor or administrator, who is to apply it, so far as may be necessary, in paying debts of the deceased and expenses.of administration, and is then to pass the residue, if any, to legatees or distributees. If the estate proves insolvent nothing is to pass to them. So in a practical sense their interests are contingent and uncertain until, in due course of administration, it is ascertained that a surplus remains after the debts and expenses are paid. Until that is done, it properly can not be said that legatees or distributees are certainly entitled to receive or enjoy any part of the property. The only right which can be said to vest in them at the time of the death is a right to demand and receive at some time in the future whatever may remain after paying the debts and expenses. But that this right Avas not intended to be taxed before there was an ascertained surplus or residue to which it could attach is inferable from the taxing act as a whole and especially from the provision whereby the rate of tax was made to depend upon the value of legacy or distributive share.”
The context of the statute indicates that Congress was dealing with a practical situation, employing language commonly used to reach estates in course of administration and at the same time providing for all the contingencies by which property in such a status might not escape taxation. The income of the estate is taxed in the hands of the executor *497 and added provisions reach it when the corpus reaches the legatee or devisee.
The plaintiff seeks to repudiate the agreement of March 13, 1918, now for the first time challenges its validity, and insists that notwithstanding the complete observance of its terms he did not acquire title and ownership of the stocks until they were transferred to his name on the books of the corporation. We doubt the availability of the contention. Is the plaintiff at present in a position to urge it, after it has been performed, and he has enjoyed all its benefits and advantages, wishing now to escape only its tax liabilities? To sustain the contention a section of the administration act of Illinois is cited. Under this enactment an executor of a deceased person’s estate is precluded from exercising any powers, except those specifically mentioned in the statue prior to his qualification as such. With this as a premise the argument is made that to constitute an assignment there must be an assignor, and the law .inhibits the executor from assigning until he qualified, hence there was and cán be no competent assignor prior to this time. The will was not probated until March 21, 1918, more than a month after the death of the testator. The plaintiff and his sister were co-executors and trustees of the entire estate; they, in conjunction with the testator’s grandson, were the sole legatees and fevisees of the entire residuary estate. If the agreement was a nullity, if its terms wer'e disadvantageous, if it was not the intention of the sole parties in interest to acquire and possess the property distributed thereunder, if as a matter of fact they did not take the property scheduled, why was the agreement not repudiated in the court having jurisdiction of the administration of the estate? Some objection should have been interposed there to an illegal proceeding. Obviously the plaintiff, as trustee, executor, and legatee, as well as his coexecutors and cotrustees, were the proper parties to object to the contract and contest its legality in the probate court. This they did not do. On the contrary, without objection from any source, they asked for and secured its Ratification in all respects. No claim is made that any *498 creditor or other legatee or devisee under the testator’s will objected to the agreement, and the findings disclose that the estate, with the probate court’s assent, was distributed exactly as therein provided. We do not think that the agreement was null and void, but valid. The' executors, legatees, and devisees of a testator’s estate, and exceptionally large estate, made up of numerous holdings of great value, and beyond peradventure solvent and fully equal to responding in all respects to the testator’s gifts and the expenses of administration, including taxes, etc., get together for the express purpose of accelerating the distribution period and preserving, as. far as may be done, the present worth of the property involved. The only and vitally interested owners of the residuum enter into an amicable distribution of the property they were given, each agreeing with the other that their proportionate share of whatever amount is necessary to be paid to satisfy prior bequests, costs, etc., will be paid, and then in fact acquiring and taking over said property with the assent and acquiescence of the executors, treating it as their own, receipting for its delivery in writing, paying their full share of the expense of administration, surely such a proceeding contravenes no law and exhibits no unfaithfulness upon the part of the executors in executing the trust imposed upon them by the testator’s will. What the plaintiff did reflects his intention, and manifestly the purpose of this agreement was to vest title and ownership of the property in and to the parties to the same. The contract is carefully drawn, it is complete in its provisions, and what is vital was performed ,in toto. Subsequently, on June 18, 1918, an order of the probate court was procured authorizing distribution of all stocks. Why it was delayed is not shown. In any event, the order does not nullify the contract; it was the usual and formal proceeding, effective to prevent liability upon the executor’s bond. The distribution in fact had previously been made. Agreements of this character are frequently made. It is in nowise unusual for executors to anticipate the distribution date in a will or the date fixed by law for the settlement of estates. This he may do by agreement among the heirs, or of his own mo *499 tion; and if it is done, as it was in this case, the agreement is effectual, unless, disturbed by some outside interests prejudiced by its terms. The Board of Tax Appeals in an exhaustive opinion so held (2 B. T. A. 921), and with this opinion we agree.
Obviously the failure to have the stock transferred from the testator’s name to the plaintiff’s on the books of the corporation can not affect title. In this case, as pertinently observed in the opinion of the Board of Tax Appeals, “ we are not passing upon the proper method of administering estates, but upon the tax liability of the taxpayer as determined by the transactions which actually occurred.” We believe the plaintiff acquired full ownership of the stock under the terms of this agreement and at the time of its execution.
The petition will be dismissed. It is so ordered.
Moss, Judge; Graham, Judge; and Campbell, Chief Justice, concur.
GreeN, Judge, took no part in the decision of this case.